

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**FILED**

MAR 13 2025 **BT**

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

| | | |
|---|---|---|
| TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION FUND, TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS WELFARE FUND, TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS DEFERRED SAVINGS FUND, TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS APPRENTICESHIP FUND, TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS SCHOLARSHIP FUND, AND TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS JOINT COOPERATION TRUST FUND, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 23-CV-4157<br><br>Judge Alonso<br><br>Mag. Beth W. Jantz |
| Plaintiffs, | ) ) | |
| v. | ) | |
| KDK DECORATORS, LLC, an Illinois limited liability company, Kenneth L Kidd, individually; Dale C. Kidd, Individually, Kenneth D. Kidd, individually | ) ) ) ) | |
| Defendants. | ) | |

---

### DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendant ~~Kenneth L. Kidd~~ *Dale C. Kidd*, an individual (the Defendant) hereby submit this Response to

Plaintiffs' First Amended Complaint and state as follows:

## Jurisdiction and Venue

I.     Jurisdiction of this cause is based on Section 502 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1132, 1145 ("ERJSA"), as amended, and 28 U.S.C. Section 1331, Section 301 of the National Labor Relations Act, 29 U.S.C. 28 U.S.C. 185(c), as amended, and federal common law.

**ANSWER: Defendant admits the allegation in Paragraph 1.**

2.     The Northern District of Illinois is the proper venue pursuant to 29 U.S.C. Section 1132(e)(2) as the Plaintiffs Funds are administered here in this judicial district.

**ANSWER: Defendant admits the allegation in Paragraph 2.**

### The Parties

3.     The Plaintiffs are the TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS PENSION FUND; TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS WELFARE FUND; TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS DEFERRED SAVINGS FUND; TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS APPRENTICESHIP FUND; TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS SCHOLARSHIP FUND; TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS RETIREE SAVINGS FUND; AND TRUSTEES OF THE CHICAGO PAINTERS AND DECORATORS JOINT COOPERATION TRUST FUND ("the Funds"), and have standing to sue pursuant to 29 U.S.C. Section 1132(d)(l).

**ANSWER: Defendant admits the allegation in Paragraph 3.**

4.     The Funds have been established pursuant to collective bargaining agreements previously entered into between the Painters District Council #14 and its affiliated locals (the "Union") and certain employer associations whose employees are or were covered by one or more collective bargaining agreements with the Union.

**ANSWER: Defendant admits the allegation in Paragraph 4.**

5.     The Funds are maintained and administered in accordance with and pursuant to the provisions of the National Labor Relations Act, 29 U.S.C. Section 186, *et seq.*, as amended, ERISA, 29 U.S.C. Section 1001, <:'l *seq.*, and also pursuant to the terms and provisions of the collective bargaining agreements and Declarations of Trust ("Trust Agreement") which established the Funds.

**ANSWER: Defendant admits the allegation in Paragraph 5.**

6.     Defendant **KDK DECORATORS, LLC ("KDK DECORATORS" or the "Company"),** an Illinois corporation, is an employer engaged in an industry affecting commerce which entered into a collective bargaining agreement ("Labor Agreement") with the Union on or about July 19, 2004 whereby **KDK DECORATORS** agreed to be bound by the provisions of the Labor Agreement and any subsequent agreements negotiated between the Union and certain employer associations. A copy of the Labor Agreement is attached as "Exhibit A."

**ANSWER: Defendant admits the allegation in Paragraph 6.**


7. Pursuant to the provisions of the Labor Agreement, **KDK DECORATORS** is bound to the Trust Agreements and is required to make periodic contributions to the Funds for each hour worked by its bargaining unit employees working within the occupational and jurisdictional scope described therein at the rate and in the manner specified by the Labor Agreement and the Trust Agreements.

**ANSWER: Defendant admits the allegation in Paragraph 7.**

**The Agreements**

8.      Under the terms of the Labor Agreement and Trust Agreement to which it is bound,

**KDK DECORATORS** is required to submit all necessary books and records to Plaintiffs' auditor

for the purpose of determining whether or not **KDK DECORATORS** is in compliance with its

obligation to contribute to the Funds.

**ANSWER: Defendant admits the allegation in Paragraph 8.**

**Count I - Audit**
**November 1, 2021 through present**

9.      Plaintiffs incorporate paragraphs 1 through 8 of this First Amended Complaint as

though fully restated herein.

**ANSWER: Defendant restates the answers in Paragraphs 1-8.**

10.     **KDK DECORATORS**, on information and belief, has breached the provisions of

the Labor Agreement and Trust Agreement by failing to submit all necessary books and records to

Plaintiffs' auditor for the audit period of **November 1, 2021 through present.**

**ANSWER: Defendant denies the allegation in Paragraph 10.**

11.     Pursuant to the provisions of the Labor Agreement and Trust Agreements, **KDK**

**DECORATORS** is required submit all necessary books and records to Plaintiffs' auditor for the audit,

during a given audit period.

**ANSWER: Defendant admits the allegation in Paragraph 11.**

12.     Plaintiffs have been required to employ the undersigned attorneys to collect the monies that may be found to be due and owing from **KDK DECORATORS**.

**ANSWER: Defendant denies the allegation in Paragraph 12.**

13.     **KDK DECORATORS** is obligated to pay the attorneys' fees and court costs incurred by the Plaintiffs pursuant to the Labor Agreement, the Trust Agreements and 29 U.S.C. Section 1 I 32(g)(D ).

**WHEREFORE,** Plaintiffs pray for relief as follows:

A. That **KDK DECORATORS** be ordered to produce its books and records for a fringe benefit contribution compliance audit for the period from **November 1, 2021, through the present.**

B. Plaintiffs be awarded their costs herein, including reasonable attorneys' fees and costs incurred in the prosecution of this action, together with all liquidated

damages in the amount of 20%, all as provided in the applicable agreements

and ERISA Section 502(g)(2);

C. This Court grant Plaintiffs such other and further relief as it may deem

appropriate under the circumstances.

**ANSWER: Defendant denies the allegation in Paragraph 13 and pray that any requested relief to the Plaintiff and their attorney be denied. KDK cooperated with the underlying audit long before the filing of this amended complaint. In fact, the Plaintiffs' accountants indicated that the audit was sufficient prior to receiving pressure from Plaintiffs' attorneys to try to find issues with KDK's benefit payment history. KDK has already been forced into bankruptcy and out of business due to the plaintiffs unlimited bottomless funds to continue to litigate their false allegations.**

**Count III - Piercing the Corporate Veil Kenneth L. Kidd**

14. Plaintiffs incorporate paragraphs 1 through 13 of this First Amended Complaint

as though fully restated herein.

**ANSWER: Defendant restates the answers in Paragraphs 1-13.**

15. **Kenneth L. Kidd ("Kenneth")** is the manager of KDK Decorators, LLC.

**ANSWER: Defendant admits the allegation in Paragraph 15.**

16. **Dale C. Kidd ("Dale)** is the mother of Kenneth L. Kidd.

**ANSWER: Defendant admits the allegation in Paragraph 16.**

17. **Kenneth D. Kidd ("Dante")** is the son of Kenneth L. Kidd.

**ANSWER: Defendant admits the allegation in Paragraph 17.**

18. Kenneth resides within the Northern District of Illinois.

**ANSWER: Defendant admits the allegation in Paragraph 18.**

19.    In cases involving ERISA, "there is a federal interest supporting disregard of the corporate from to impose liability." *Lumpkin v. Evirondyne Industries. Inc.*, 933 F.2d 449, 460 (7th Cir. 199 I}.

**ANSWER: Defendant denies the allegation in Paragraph 19.**

20.    A court can pierce the corporate veil if two conditions are met: a) there must be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and b) circumstances such that the adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice. *Hystro Prods. Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994).

**ANSWER: Defendant denies the allegation in Paragraph 20.**

21. The Limited Liability Company Act provides:

> "(a-5) Nothing in subsection (a) or subsection (d) limits the personal liability of a member or manager imposed under law other than this Act, including, but not limited to, agency, contract, and tort law. The purpose of this subsection (a-5) is to overrule the interpretation of subsections (a) and (d) set forth in *Dass v. Yale*,

2013 TL App (pt) 122520, and *Carollo v. Inrin,* 2011 TL App (15[1]) 102765, and to clarify that under existing law a member or manager of a limited liability company may be liable under law other than this Act for its own wrongful acts or omissions, even when acting or purporting to act on behalf of a limited liability company." 805 ILCS 180/10-10.

**ANSWER: Defendant denies the allegation in Paragraph 21.**

22. Members of an LLC can be personally liable piercing the corporate veil for bases including alter ego, fraud, or undercapitalization. *Westmeyer v. F rnn,* 382 Ill App. 3rd 952, 960 (1st Dist. 2008).

**ANSWER: Defendant denies the allegation in Paragraph 22.**

A. Unity of Interest and Ownership Between KDK Decorators and Kenneth L. Kidd

23. There is such a unity of interest and ownership that the separate personalities of KDK Decorators and Kenneth L. Kidd no longer exist.

**ANSWER: Defendant denies the allegation in Paragraph 23.**

24. Unity of interest and ownership can be shown through: a) evidence of misrepresentation; b) undercapitalization; c) comingling of assets or identities; d) failure to operate at ann's length; e) failure to comply with corporate formalities; and or f) failure to keep adequate records. *Sea-Land Servs., Inc v. Pepper Source,* 941 F.2d 519, 521 (7th Cir. 1991).

**ANSWER: Defendant denies the allegation in Paragraph 24.**

i) Evidence of Misrepresentation

25. KDK Decorators made misrepresentations regarding its corporate bank accounts.

**ANSWER: Defendant denies the allegation in Paragraph 25.**

26. The misrepresentations include failing to identify all corporate bank accounts.

a. KDK Decorators initially identified two bank accounts for the Company at

Self-Help Credit Union, an operating account and a payroll account.

b. KDK Decorators maintained multiple other accounts at Self-Help Credit Union.

c. Assets were transferred into the operating and payroll account from the other Self-Help Credit Union Accounts.

d. There are checks deposited into the KDK operating and payroll account where the remitter is KDK from undisclosed bank accounts at BMO Harris. Republic Bank, and First Midwest Bank.

e. There is an account held at Chase bank by Dale C. Kidd dba Dale C. Kidd KDK Decorators (hereinafter "Chase Bank Account").

i. There were checks written from the Chase Bank Account totaling over $400,000.00 that were deposited into KOK Decorator's bank account.

ii. The memo line for the checks from the Chase Bank Account contain the following descriptions: office expenses; material; equipment rental; benefit payments; taxes and materials; and business account loans.

**ANSWER: Defendant denies the allegation in Paragraph 26.**

ii. *KDK is Undercapitalized*

27.      KDK Decorators is undercapitalized.

**ANSWER: Defendant denies the allegation in Paragraph 27.**

28.     The undercapitalization is evidenced by the following:

a. .KDK Decorators keeps the account balance in its operating and payroll
accounts low.

b. KOK Decorators' payroll account at Self-Help Credit Union had multiple
payments returned Non-Sufficient Funds ("NSF") in May 2022.

c. KOK Decorators' payroll account at Self-Help Credit Union had multiple
payments returned Non-Sufficient Funds in April 2022.

d. KOK Decorators operating account at Self-Help Credit Union had a payment
returned NSF in April 2023.

e. KDK Decorators· operating account at Self-Help Credit Union had a
negative account balance in January 2023.

f. KOK Decorators' operating account at Self-Help Credit Union had a negative
account balance in June 2022.

g. KDK Decorators' operating account at Self-Help Credit Union had an
ending balance of $8,965.58 in June 2023.

h. KOK Decorators, in an account not previously disclosed to Plaintiffs at Self-
Help Credit Union, had an ending account balance of$115,272 in June 2023.

i. Checks were written from the Chase Bank Account and Deposited into the
KDK Bank account totaling over $400,000.00.

j. The memo line for the checks from the Chase Bank Account contain the following descriptions: office expenses; material; equipment rental; benefit payments; taxes and materials; and business account loans.

k. The Chase Bank Account is used to keep the KOK Decorator's accounts undercapitalized.

**ANSWER: Defendant denies the allegation in Paragraph 28.**

*iii.* ***Comingling of assets or identity***

29. There is a comingling of assets or identity in relation to KOK and Kenneth

**ANSWER: Defendant denies the allegation in Paragraph 29.**

30. There are multiple checks made payable to Kenneth L. Kidd that were deposited into a KDK Decorators account including:

a. April 21, 2023 - a check payable to Kenneth L. Kidd deposited into a KOK bank account

b. November 4, 2022 - a check from Dale payable to Kenneth was deposited into a **KDK** bank account.

c. October 30, 2020 - a check from Dale payable to Kenneth was deposited into a KDK bank account.

d. June 23. 2020 - a check from Dale payable to Kenneth was deposited into a

KDK bank account.

**ANSWER: Defendant denies the allegation in Paragraph 30 due to lack of descriptive informatic**

iii. Failure to Operate at Arm's Length

31.    KDK Decorators failed to operate at an arm's length with relation to Dale and

Dante.

**ANSWER: Defendant denies the allegation in Paragraph 31.**

32.    The failure to observe corporate formalities includes but is not limited to:

a.  Dante is the son of Kenneth, the member of KDK.

b. KDK transferred over $100,000.00 to Dante.

c. Dante made purchases on behalf of the company including for materials and

supplies on his personal credit card.

d. No cost-sharing, loan, or other written agreement between KDK Decorators

relating to purchases made by Dante on behalf of the company or relating to the

transfers between the Company and Dante.

e. Dale is the mother of Kenneth, the member of KDK.

f. Dale maintains an account held at Chase Bank in the name, Dale C. Kidd

dba Dale C. Kidd KDK Decorators.

g. There were checks written from the Chase Bank Account totaling over

$400,000.00 that were deposited into KDK Decorator's bank account.

h. The memo line for the checks from the Chase Bank Account contain the

following descriptions: office expenses; material; equipment rental; benefit

payments; taxes and materials; and business account loans.

i. No cost-sharing, loan, or other written agreement between KDK Decorators relating to purchases made by Dale C. Kidd ("Dale") on behalf of the company or relating to the transfers between Dale C. Kidd ("Dale") and the Company.

**ANSWER: Defendant denies the allegation in Paragraph 32.**

*iv. **KDK** Decorators Failed to Maintain Adequate Records*

33.     KDK Decorators failed to maintain adequate corporate records including but not limited to:

a.  KDK Decorators failed to maintain a general ledger of all checks and transfers out of KDK Decorators' Bank Accounts and transfers into KDK Decorators' Bank Accounts.

**ANSWER: Defendant denies the allegation in Paragraph 33.**

34.     The preceding allegations demonstrate such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist between Kenneth and KDK.

**ANSWER: Defendant denies the allegation in Paragraph 34.**

B. Fraud and Injustice Arising from Kenneth's Action.

35.     There is fraud and injustice arising from Kenneth's actions.

**ANSWER: Defendant denies the allegation in Paragraph 35.**

36.     Eligible KDK Decorators employees have been deprived of pension credits and other benefits that were not properly reported and paid.

**ANSWER: Defendant denies the allegation in Paragraph 36.**

37.     Kenneth L. Kidd has been unjustly enriched by not paying all required benefits.

**ANSWER: Defendant denies the allegation in Paragraph 37.**

38.     Adherence to the fiction of a separate corporate existence would

promote injustice or inequitable consequences.

WHEREFORE, Plaintiffs pray for the following relief:

A.  That this Court Pierce the Corporate Veil;

B.  That this Court find Kenneth L. Kidd jointly and severally liable for any shown to be

owed on an audit for the period of November 1, 2021 through the present;

C.  Plaintiffs be awarded their costs herein, including reasonable attorneys' fees and costs

incurred in the prosecution of this action, together with all liquidated damages in the

amount of 20%, all as provided in the applicable agreements and ERISA Section 502(g)(2);

D.  This Court grant Plaintiffs such other and further relief as it may deem appropriate

under the circumstances.

**ANSWER: Defendant denies the allegation in Paragraph 38 and pray that any requested relief to
the Plaintiff and their attorney be denied.**

**Count III - Piercing the Corporate Veil Dale C. Kidd**

39.     Plaintiffs incorporate paragraphs I through 38 of this First Amended Complaint as though fully restated herein.

**ANSWER: Defendant restates the answers in Paragraphs 1-38.**


40.     Dale resides in the Northern District of Illinois.

**ANSWER: Defendant admits the allegation in Paragraph 40.**

41.     Lack of status as an officer, director, or employee does not preclude veil-piercing.

*Buckley v. Abuzir,* 8 N.E.Yd 1166, 1177 (Ill. App. P[1] 2014).

**ANSWER: Defendant denies the allegation in Paragraph 41.**


*A. Unity of Interest between KDK Decorators and Dale C. Kidd*

42.     There is such a unity of interest and ownership that the separate personalities of KDK Decorators and Dale C. Kidd no longer exist.

**ANSWER: Defendant denies the allegation in Paragraph 42. Defendant is a 78-year-old retired schoolteacher and a great grandmother.**


i) Evidence of misrepresentation

43. Dale made misrepresentations about the nature of the Dale C. Kidd dba Dale C. Kidd KDK Decorators Chase Bank Account.

**ANSWER: Defendant disagrees the allegation in Paragraph 43.**

44. Dale maintains an account at Chase Bank under the name Dale C. Kidd dba Dale C. Kidd **KDK** Decorators.

**ANSWER: Defendant agrees the allegation in Paragraph 44, however KDK has filed bankruptcy and is no longer in business.**

45. Dale stated in an affidavit that the Chase Bank Account was not used to conduct business.

**ANSWER: Defendant stated the account was not created to conduct business.**

46. Dale stated in an affidavit that the Chase Bank Account was not used to pay wages and benefits.

**ANSWER: Defendant has never made out direct payments to union payroll or union benefits from this account.**

47. There were checks written from Chase Bank Account that were deposited into the KDK Decorators account from the period of 2017 through 2022 totaling over $400,000.00.

**ANSWER: Defendant disagrees the allegation in Paragraph 47.**

48. The memo line on the checks from the Dale C. Kidd account contain descriptions including:
     a) office expenses
     b) material
     c) equipment rental
     d) benefit payments
     e) taxes and materials
     f) business account loans

**ANSWER: Defendant has never made out direct payments to union payroll or union benefits from this account.**

49.    There are at least four instances where checks were written from the Chase Bank Account and deposited into the KDK Decorators bank account, which were then used to pay wages and/or benefits.

**ANSWER: Defendant has never made out direct payments to union payroll or union benefits from this account.**

50.    Dale signed a declaration stating that she is not an employee, owner, operator, or otherwise affiliated with the operations of KDK Decorators.

**ANSWERE: Defendant is the mother of Kennth L. Kidd and is a 78-year-old retired schoolteacher.**

51.    Despite claiming no involvement with KDK Decorators, the Company paid Dale $29,600 from March 2023 through July 2023 and Dale wrote checks from the Chase Bank Account to KDK Decorators totaling over $400,000.00 to pay for miscellaneous business expenses.

**ANSWER: Defendant disagrees the allegation in Paragraph 51, defendant has never made out direct payments to union payroll or union benefits from this account.**

**ii) Dale Participated in the Undercapitalization of KDK Decorators**

52.    From the period of 2017 through 2022, Dale C. Kidd wrote checks that were deposited into the accounts of KDK Decorators totaling over $400,000.00.

**ANSWER: Defendant disagrees the allegation in Paragraph 52, defendant has never made out direct payments to union payroll or union benefits from this account.**

53.    These transfers demonstrate Dale's participation in keeping the operating and payroll accounts of KDK Decorators undercapitalized.

**ANSWER: Defendant disagrees the allegation in Paragraph 53, defendant has never made out direct payments to union payroll or union benefits from this account.**

iii) KDK Assets were Comingled with the Personal Assets of Dale C. Kidd

54. The assets of KDK Decorators were comingled with the assets of Dale C. Kidd in

the Chase Bank account.

**ANSWER: Defendant disagrees the allegation in Paragraph 54, defendant has never made out direct payments to union payroll or union benefits from this account.**

55. Dale maintains an account at Chase Bank under the name Dale C. Kidd dba Dale

C. Kidd KDK Decorators.

**ANSWER: Defendant agrees with allegation in Paragraph 55, however KDK has filed bankruptcy and is no longer in business.**

56. There was over $400,000.00 transferred from the Chase Bank account into KDK

bank accounts.

**ANSWER: Defendant disagrees the allegation in Paragraph 56.**

57. The fact the name of the Chase Bank account contains dba KDK Decorators

allows checks made payable to KDK be deposited into the account.

**ANSWER: Defendant has never made out direct payments to union payroll or union benefits from this account.**

iv) Failure to Operate at Arm's Length

58. Dale is the mother of Kenneth, the member of KDK.

**ANSWER: Defendant agrees the allegation in Paragraph 58,**

59. KDK Decorators paid Dale $29,600 from March 2023 through July 2023.

**ANSWER: Defendant has never made out direct payments to union payroll or union benefits from this account.**

60. Dale C. Kidd maintains an account at Chase Bank in the name Dale C. Kidd dba

Dale C. Kidd KDK Decorators.

**ANSWER: Defendant has never made out direct payments to union payroll or union benefits from this account.**

61. There were checks written from Dale C. Kidd account that were deposited into the KDK Decorators account from the period of 2017 through 2022 totaling over $400,000.00.

**ANSWER: Defendant disagrees the allegation in Paragraph 61, defendant has never made out direct payments to union payroll or union benefits from this account.**

62. The memo line on the checks from the Dale C. Kidd account contain descriptions including:
 a) office expenses
 b) material
 c) equipment rental
 d) benefit payments
 e) taxes and materials
 f) business account loans

**ANSWER: Defendant has never made out direct payments to union payroll or union benefits from this account.**

63. There are at least four instances where checks were written from the Dale C. Kidd account and deposited into the KDK Decorators bank account, which were then used to pay wages and/or benefits.

**ANSWER: Defendant disagrees the allegation in Paragraph 63, defendant has never made out direct payments to union payroll or union benefits from this account.**

64.     No cost-sharing, loan, or other written agreement between **KDK** Decorators

relating to purchases made by Dale on behalf of the company or relating to the transfers between

Dale and the Company.

**ANSWER: Defendant disagrees the allegation in Paragraph 61, defendant has never made out direct payments to union payroll or union benefits from this account.**

  v) Failure to keep adequate records

65.     There is no general ledger that logs the transactions between KDK and Dale.

**ANSWER: Defendant disagrees the allegation, defendant has never made out direct payments to union payroll or union benefits from this account.**

66.     There is no ledger that explains the transfers between KDK and Dale.

**ANSWER: Defendant disagrees the allegation, defendant has never made out direct payments to union payroll or union benefits from this account.**

67.     No cost-sharing, loan, or other written agreement between KDK Decorators

relating to purchases made by Dale on behalf of the company or relating to the transfers between

Dale and the Company.

**ANSWER: Defendant disagrees the allegation, defendant has never made out direct payments to union payroll or union benefits from this account.**

68.     The preceding allegations demonstrate such unity of interest and ownership that

the separate personalities of the corporation and the individual no longer exist between KDK and

Dale.

B. Fraud and Injustice Arising from Dale C. Kidd's Actions

**ANSWER: Defendant denies the allegation in Paragraph 68.**

69.     There is fraud and injustice arising from Dale's actions.

**ANSWER: Defendant denies the allegation in line 69.**

70.     Eligible KDK Decorators employees have been deprived of pension credits and other benefits that were not properly reported and paid.

**ANSWER: Defendant denies the allegation in Paragraph 70.**

71.     Dale C. Kidd was unjustly enriched in the scheme to avoid paying benefits in that corporate assets were placed into an account which also held personal assets.

**ANSWER: Defendant denies the allegation in Paragraph 71.**

72.     Adherence to the fiction of a separate corporate existence would promote injustice or inequitable consequences.

WHEREFORE, Plaintiffs pray for the following relief:

   A. That this Court Pierce the Corporate Veil;

   B. That this Court find Dale C. Kidd jointly and severally liable for any shown to be owed on an audit for the period of November 1, 2021 through the present;

   C. Plaintiffs be awarded their costs herein, including reasonable attorneys' fees and costs incurred in the prosecution of this action, together with all liquidated damages in the amount of 20%, all as provided in the applicable agreements and ERISA Section 502(g)(2);

   D. This Court grant Plaintiffs such other and further relief as it may deem appropriate under the circumstances.

**ANSWER: Defendant denies the allegation in Paragraph 13 and pray that any requested relief to the Plaintiff and their attorney be denied. KDK cooperated with the underlying audit long before the filing of this amended complaint. In fact, the Plaintiffs' accountants indicated that the audit was sufficient prior to receiving pressure from Plaintiffs' attorneys to try to find issues with KDK's benefit payment history. KDK has already been forced into bankruptcy and out of business due to the plaintiffs unlimited bottomless funds to continue to litigate their false allegations.**

## CONCLUSION: - No 23-CV-4157

please see attached sheet.

No. 23-CV-4157
Judge Alonso

I Dale C. Kidd have never
had any legal problems in
my entire 78 years. I
have never even had a
traffic ticket in my life time,
I have raised Kenneth D.(L.)
Kidd to be an honorable
person, anyone who has met
him tell me I raised a
good son. Judge Alonso
am saying these things
to counter the implied
accusations about my
family character. We are
proud of Kenneth L. Kidd
efforts to try hard to
build a business from
the ground-up.

Also, I will not be able
to afford legal council.
I have tried to seek help.
I am on a fixed income
from Soc. Security.